UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
JEFFREY D. DINTZER, an individual,
and AMY R. FORBES, an individual,

Plaintiffs,

- against -

NAVIOS MARITIME HOLDINGS INC.,
a Republic of the Marshall Islands
corporation, ANGELIKI N. FRANGOU,
an individual, GEORGE MALANGA,
an individual, SPYRIDON MAGOULAS,
an individual, JOHN STRATAKIS,
an individual, and SHUNJI SASADA,
an individual,

Defendants.

-------------------------------------X

**MEMORANDUM AND ORDER**

25 Civ. 4650 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Jeffrey D. Dintzer and Amy R. Forbes bring this action against Navios Maritime Holdings Inc. ("Navios" or the "Company"), Angeliki N. Frangou, George Malanga, Spyridon Magoulas, John Stratakis, and Shunji Sasada, asserting claims arising from Navios' 2023 going-private merger and its decision to delist its preferred stock from the New York Stock Exchange. Specifically, plaintiffs assert claims for common law fraud, breach of fiduciary duty, and enforcement of shareholder inspection rights. Presently before the Court is the motion of Navios, Mr. Sasada, and Mr. Stratakis (together, "defendants") to dismiss the action pursuant to Rules 12(b)(2) and 12(b)(6) of the

Federal Rules of Civil Procedure. Defendants contend that: (i) the Court lacks personal jurisdiction over Navios and Mr. Sasada; (ii) plaintiffs fail to state a fraud claim; (iii) the fraud claim is not adequately pleaded against Messrs. Sasada or Stratakis individually; (iv) plaintiffs fail to state claims for breach of fiduciary duty; and (v) plaintiff Dintzer's books-and-records claim was brought in an improper forum and rests on a defective demand. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## I. Factual Background[1]

Plaintiffs Jeffrey D. Dintzer and Amy R. Forbes are California residents who hold American Depositary Shares ("ADSs") representing preferred stock issued by Navios, a shipping corporation organized under the laws of the Republic of the Marshall Islands. FAC ¶¶ 6-9, 22, 24. Defendant Angeliki Frangou has served as Navios' Chief Executive Officer and Chairwoman of its Board since Navios' founding in 2005 and, at all relevant times, controlled Navios' common stock through N Logistics Holdings Corporation ("NLHC"), an entity she indirectly owns. Id. ¶¶ 9, 23. Messrs. Magoulas, Malanga, Stratakis, and Sasada

[1] The following facts are drawn from the First Amended Complaint ("FAC"), ECF No. 37, and are assumed to be true for the purposes of the present motion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

(together, the "Director Defendants") are current or former Navios directors.[2] Id. ¶¶ 10-13, 20(h).

In 2014, Navios issued 8.75% Series G Cumulative Redeemable Perpetual Preferred Stock and 8.625% Series H Cumulative Redeemable Perpetual Preferred Stock (together, the "Preferred Stock"), which trade in the form of ADSs and, until the events at issue here, were listed on the New York Stock Exchange ("NYSE"). Id. ¶¶ 24-26, 30. Navios suspended dividend payments on the Preferred Stock ADSs in February 2016. Id. ¶ 37. Mr. Dintzer purchased Series G ADSs in October 2021, and Ms. Forbes purchased Series G and Series H ADSs in February and March 2022. Id. ¶¶ 39-41.

In October 2023, Navios announced that Ms. Frangou, through NLHC, would acquire all outstanding Navios common stock that she did not already own, thereby taking the Company private (the "Merger"). Id. ¶¶ 23, 42. The Merger was negotiated on Navios' behalf by a Special Committee comprised of Messrs. Magoulas and Malanga. Id. ¶¶ 10-11, 43. In SEC filings regarding the Merger, Navios disclosed that its common stock would be delisted from the NYSE upon closing and stated that the Preferred Stock and the

[2] The docket reflects that only defendants Navios, Mr. Sasada, and Mr. Stratakis have appeared and moved to dismiss. See Mot. at 5 n.4. Accordingly, the Court addresses the merits of the instant motion only as to those defendants.

related ADSs would be "unaffected by the Merger and remain outstanding as identical securities of [Navios]." Id. ¶¶ 43-46. Plaintiffs allege that they understood these statements as assuring that the Preferred Stock would retain its same contractual rights following the Merger and that the ADSs would continue to trade on the NYSE. Id. ¶¶ 47-49. Plaintiffs allege that they relied on these disclosures in deciding to continue holding their ADSs through the Merger's closing on December 14, 2023. Id. ¶¶ 48-54.

Approximately five weeks after the Merger closed, Navios announced on January 19, 2024 that the Board had approved the voluntary delisting and deregistration of the Preferred Stock ADSs from the NYSE, effective February 9, 2024 (the "Delisting"), citing the costs of continued listing. Id. ¶¶ 55-58. Plaintiffs allege that the announcement caused the market price of the ADSs to decline substantially and that, after the Delisting, the ADSs traded only on the over-the-counter ("OTC") pink market at significantly reduced prices and with diminished liquidity. Id. ¶¶ 59-63. Plaintiffs continue to hold their ADSs. Id. ¶¶ 72-73. Mr. Dintzer purchased 30,000 Series G ADSs for approximately $368,000. Id. ¶ 74. Their value has dropped to approximately $165,000 at the time of the filing of the First Amended Complaint.

Id. Ms. Forbes purchased 3,750 Series G and 3,750 Series H ADSs for approximately $134,250. Id. ¶ 75. Their value has dropped to approximately $37,500 at the time of the filing of the First Amended Complaint. Id.

Plaintiffs allege that defendants knowingly misled investors by representing that the Preferred Stock and ADSs would be "unaffected" by the Merger while intending, at the time those statements were made, to delist the ADSs shortly after the Merger. Id. ¶¶ 59-76. Plaintiffs allege that had Navios disclosed its intention to delist the Preferred Stock before closing, they would have sold their ADSs before the market reacted to the eventual announcement. Id. ¶¶ 52, 147-50.

## II. Procedural Background

Plaintiffs filed their original complaint on June 4, 2025. ECF No. 10. On July 14, 2025, Navios and Mr. Stratakis filed a pre-motion letter seeking leave to file a motion to dismiss the complaint. ECF No. 26. Plaintiffs opposed the request on July 17, 2025. ECF No. 28. On August 7, 2025, the Court permitted Navios and Mr. Stratakis to bring their motion without a pre-motion conference and granted plaintiffs leave to amend by August 28, 2025 if, consistent with Rule 11, they could cure any alleged deficiencies raised by defendants. ECF No. 29. On August 27,

2025, the Court likewise permitted Mr. Sasada to join the previously-served defendants' motion without a pre-motion conference. ECF No. 36.

Plaintiffs filed the First Amended Complaint on August 28, 2025, asserting four causes of action: (i) breach of fiduciary duty against Ms. Frangou; (ii) breach of fiduciary duty against the Director Defendants; (iii) common law fraud against Navios, Ms. Frangou, and the Director Defendants; (iv) a books-and-records claim, brought by Mr. Dintzer against Navios. ECF No. 37. Defendants moved to dismiss the First Amended Complaint on September 30, 2025, ECF No. 41 ("Mot."), and submitted two supporting declarations, ECF Nos. 42, 43. Pursuant to an amended briefing schedule, ECF No. 46, plaintiffs opposed on November 15, 2025, ECF No. 48 ("Opp.") and filed a supporting declaration, ECF No. 49.[3] Defendants' motion was fully briefed on December 8, 2025. ECF No. 51, ECF No. 52 ("Reply"). While the motion was pending, on January 15, 2026, defendants notified the Court of a decision by the Supreme Court, New York County, dismissing an unrelated action against Navios for lack of personal jurisdiction. ECF No.

[3] In their opposition, plaintiffs sought oral argument on defendants' motion. ECF No. 48. However, because the parties' submissions fundamentally concern legal, rather than factual, issues, the Court has concluded that oral argument is unnecessary. See Mir v. Shah, 2012 WL 6097770, at *4 (S.D.N.Y. Dec. 4, 2012); see also Katz v. Morgenthau, 892 F.2d 20, 22 (2d Cir. 1989).

53. Five months later, defendants informed the Court that the decision had been reversed by the Appellate Division, First Department and attached the decision. ECF No. 54. On June 16, 2026, plaintiffs filed a letter responding to defendants' supplemental authority. ECF No. 55.

## III. Legal Standard

### a. Rule 12(b)(2)

When opposing a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must "make a prima facie showing that jurisdiction exists." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted). Such a showing requires legally sufficient allegations of jurisdiction, including an "averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Id. at 35. (citation and internal quotation marks omitted).

A complaint's allegations must be taken as true to the extent they are uncontroverted by a defendant's affidavits. MacDermid, Inc. v. Deiter, 702 F.3d 725, 727-28 (2d Cir. 2012). Where the parties present conflicting affidavits, "all factual disputes are

resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993) (citation omitted). The court must construe the pleadings and affidavits in the light most favorable to the plaintiff, "resolving all doubts in [its] favor." Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 126 (2d Cir. 2008) (citing DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). A federal court sitting in diversity in New York may exercise jurisdiction over a foreign defendant to the extent authorized by New York's long-arm statute, C.P.L.R. § 302, and consistent with the Due Process Clause. D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006).

**b. Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009). While the Court accepts the truth of the pleaded facts, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

## DISCUSSION

Defendants argue that the Court lacks personal jurisdiction over Navios and Mr. Sasada; that the FAC fails to state claims for fraud and breach of fiduciary duty, including a sufficiently particularized fraud claim against Messrs. Sasada and Stratakis; and that Mr. Dintzer's books-and-records claim rests on a defective demand and was brought in an improper forum. Each argument is addressed below.

### I. Personal Jurisdiction

Navios and Mr. Sasada move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). Mot. at 7-16. Mr. Stratakis, a New York resident, does not contest jurisdiction. Id. at 1 n.1.

#### a. General Jurisdiction Over Navios

Navios is not subject to general jurisdiction in New York. Aside from an "exceptional case," a corporation is at home, and

thus subject to general jurisdiction, only in its place of incorporation or principal place of business. Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014) (quoting Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (2014)). Navios is incorporated in the Marshall Islands and headquartered in the Cayman Islands, FAC ¶ 8, and plaintiffs do not allege facts suggesting this is the "exceptional case" in which a corporation's contacts elsewhere are so substantial as to render it at home outside those two locations.

**b. Specific Jurisdiction Over Navios**

Plaintiffs contend that Navios consented to jurisdiction through a forum-selection clause in a 2014 depositary agreement governing the ADSs. Opp. at 13; ECF Nos. 49-1, 49-2. However, that agreement was superseded in March 2021 by an amended agreement limiting New York jurisdiction to disputes between Navios and the successor depositary arising from the agreement. ECF No. 51-1. Jurisdiction therefore depends on New York's long-arm statute, which reaches a non-domiciliary that "transacts any business within the state," where the cause of action arises from that transaction. N.Y. C.P.L.R. 302(a)(1). Thus, the relevant questions are whether Navios transacted business in New York, and whether plaintiffs' claims arise from that business. Licci ex

rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012).

The First Department recently resolved the first question as to Navios and the same Preferred Stock. The certificates of designation required Navios to provide dividends to a paying agent, which would then provide the funds to a depositary for distribution to preferred stockholders. Katz v. Navios Mar. Holdings, Inc., 257 N.Y.S.3d 85, 86 (1st Dep't 2026). Navios designated New York entities as the paying agent and depositary, required its depositaries to maintain facilities in New York City, and contracted with New York underwriters to sell the Preferred Stock. Id.; see also FAC ¶ 20(a)-(c). The First Department held that these arrangements constituted purposeful availment under CPLR 302(a)(1)'s transacting-business requirement. Katz, 257 N.Y.S.3d at 86. The Court finds no basis to reach a different conclusion.

With respect to the second prong, a claim arises from or relates to a defendant's New York business where there is an "articulable nexus" or "substantial relationship" between the two. Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006). This requirement is satisfied where "at least one element" of the cause of action arises from the New York contacts. Licci v. Lebanese Canadian Bank, SAL, 20 N.Y.3d 327,

341 (2012). In Katz, relatedness existed because plaintiffs' claims were premised on Navios' alleged failure to make dividend payments, which necessarily would have passed through its New York paying agent. Katz, 257 N.Y.S.3d at 86.

Although Katz involved contract claims, the required nexus is also present here. Plaintiffs allege that Navios falsely represented that the ADSs would remain "unaffected" by the Merger while intending to delist them shortly thereafter. See generally FAC ¶¶ 136-54. Those representations concerned ADSs that Navios purposefully issued and maintained in the New York securities market through the New York-based arrangements identified in Katz, culminating in Navios notifying the NYSE of the Delisting and allegedly causing the ADSs' market prices to collapse. Id. ¶¶ 59-62. Accordingly, at a minimum, the alleged loss-causation and damages elements of plaintiffs' fraud claim bear a substantial relationship to Navios' New York contacts. That is sufficient at this stage to satisfy the relatedness requirement.

Once minimum contacts are established, Navios must present a "compelling case" that other considerations would render the exercise of jurisdiction unreasonable. D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro, 29 N.Y.3d 292, 300 (2017) (internal quotation marks omitted). Navios has not done so.

Indeed, the First Department concluded that the exercise of jurisdiction over Navios on the basis of these same preferred-stock arrangements comported with due process. Katz, 257 N.Y.S.3d at 86.

**c. Jurisdiction Over Mr. Sasada**

Mr. Sasada moves to dismiss on the ground that he is domiciled in Connecticut and has no relevant New York contacts. Mot. at 8; Reply at 5-6. The Court concludes that plaintiffs have made the prima facie showing necessary at this stage.

The FAC alleges that Mr. Sasada maintains a residence in New York. FAC ¶ 20(h). Vasiliki Papaefthymiou, who holds the position of Navios' "Executive Vice President – Legal," attests that Mr. Sasada resides in Connecticut and has not resided in New York during his tenure as a Navios director. ECF No. 42 ¶ 3. Ms. Papaefthymiou relies on her "personal knowledge" and review of Navios' records but does not explain how she knows Mr. Sasada's residential arrangements, and Mr. Sasada submitted no declaration of his own. Id. ¶ 1. A specific, non-conclusory declaration may controvert a bare pleading allegation for purposes of a Rule 12(b)(2) motion. MacDermid, 702 F.3d at 727. However, the basis for Ms. Papaefthymiou's declaration does not explain how, as "Executive Vice President – Legal," she has personal knowledge of

where a particular director resides, as distinct from, for example, an address maintained in the Company's corporate records. Mr. Sasada's failure to submit a declaration of his own leaves the Court without testimony from the person best positioned to address whether he resides in New York and the nature of any such residence. On the existing record, the Court cannot find that Ms. Papaefthymiou's declaration conclusively rebuts the FAC's allegation.

At the prima facie stage, the Court resolves factual disputes and construes the pleadings and affidavits in plaintiffs' favor. Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84-85 (2d Cir. 2013) (citation omitted). Because the only evidence offered to controvert plaintiffs' jurisdictional allegation is itself of doubtful evidentiary weight, the Court declines to treat the allegation as conclusively rebutted at this stage.[4] Accordingly, the Court credits the FAC's allegation that Mr. Sasada maintains a residence in New York and finds that plaintiffs have made a prima facie showing of jurisdiction over Mr. Sasada. Because this finding rests on domicile, no separate reasonableness

[4] The Court is mindful that, at the prima facie stage, doubts as to the sufficiency of jurisdictional allegations are resolved in plaintiffs' favor, subject, however, to renewed challenge should discovery clarify the nature of Mr. Sasada's connection to New York.

inquiry is required, and the Court does not reach plaintiffs' alternative agency theory.

## II. Fraud Claim

Plaintiffs' third cause of action alleges common law fraud by Navios, Mr. Sasada, and Mr. Stratakis in connection with the Merger disclosures. FAC ¶¶ 136-54. Defendants move to dismiss the fraud claim, arguing that plaintiffs fail to plead falsity, scienter, or loss causation, that the claim is an impermissible "holder claim," and that Messrs. Sasada and Stratakis made no actionable statements. See generally Mot. at 16-22. The Court concludes that plaintiffs adequately state a claim against Navios but not against Messrs. Sasada or Stratakis.

To state a claim for fraud under either New York or California law, a plaintiff must allege (i) a material misrepresentation or omission of fact, (ii) made with knowledge of its falsity, (iii) with an intent to defraud, (iv) reasonable reliance, and (v) resulting damages. Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009).[5] Fraud claims are subject to the heightened pleading requirements of Rule 9(b), which requires a

[5] Though plaintiffs are California residents, the elements of common law fraud do not materially differ between New York and California. Amusement Indus. v. Stern, 693 F. Supp. 2d 327, 339 (S.D.N.Y. 2010); Williams v. L.A. Models, Inc., 2008 WL 3304588, at *7 n.32 (S.D.N.Y. Aug. 5, 2008). Accordingly, the Court need not resolve which state's law governs those elements.

plaintiff to plead the circumstances constituting fraud with particularity, including the speaker responsible for each challenged statement, and to allege facts giving rise to a strong inference of fraudulent intent. Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (citations omitted).

**a. False or Misleading**

Navios' SEC filings concerning the Merger stated that the Preferred Stock and related ADSs would be "unaffected by the Merger and remain outstanding as identical securities of [Navios]." FAC ¶ 45. Defendants argue that these statements cannot be false because the Merger neither altered the Preferred Stock's contractual rights nor caused it to cease remain outstanding. Mot. at 16-18. Defendants further contend that the Merger and Delisting were distinct acts and that the challenged statements cannot be judged by reference to a decision the Board made five weeks later. Id. The Court declines to adopt that narrow reading, which focuses exclusively on the Preferred Stock's formal terms, gives insufficient effect to Navios' representation that the ADSs would be "unaffected," and ignores the practical transformation of plaintiffs' investment.

Before the Merger, Navios' common stock and the ADSs representing its Preferred Stock traded publicly on the NYSE. FAC

¶¶ 24-30. The Merger completed Ms. Frangou's acquisition, through NLHC, of the Navios common stock she did not already own, leaving Navios wholly owned by her. Id. ¶¶ 23, 42, 54. The FAC further alleges that the Board knew of the costs of maintaining the Preferred Stock's NYSE listing during the Merger process, id. ¶¶ 102-07, and approved the Delisting approximately five weeks after closing, id. ¶¶ 54-58. By the time the sequence had run its course, plaintiffs held ADSs representing Preferred Stock in a wholly-owned company, and tradeable only on the illiquid OTC Market rather than the NYSE. Id. ¶¶ 2, 64.

The statement that the Preferred Stock and ADSs would be "unaffected" by a transaction that set this sequence in motion is not rendered accurate merely because the Certificates of Designation were not formally amended. The veracity of a statement "is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers." Kleinman v. Elan Corp., plc, 706 F.3d 145, 152-53 (2d Cir. 2013) (citation omitted); see also Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175, 186-87 (2015) (misleading character assessed from the prospective of a reasonable investor). A reasonable investor, informed in the same disclosure that the Merger would result in the delisting of Navios'

common stock, and simultaneously assured that the Preferred Stock and ADSs would be "unaffected," would not necessarily understand that assurance as confined to the Preferred Stock's contractual terms while excluding a contemplated change to the exchange listing and liquidity of the ADSs. The Court cannot say, on this record, that no reasonable investor could have understood "unaffected" to convey more than defendants now say it meant.

Further, defendants' argument that the Merger and the delisting were distinct corporate acts asks the Court to sever, at the pleading stage, a sequence that the FAC alleges was continuous and planned from the outset. A statement that the Preferred Stock and related ADSs would be "unaffected" by the Merger could be misleading if, as plaintiffs allege, defendants already contemplated the Delisting as part of the same plan. FAC ¶ 133 ("[T]he costs versus benefits of keeping the ADSs listed with the NYSE and registered with the SEC were facts well known to the [Board] long in advance [of] the close of the [Merger]."). That the Board formally approved the Delisting five weeks after closing does not compel a contrary conclusion.

**b. Scienter**

Plaintiffs adequately plead scienter as to Navios. A plaintiff may plead scienter either by alleging motive and

opportunity to defraud, or by alleging facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 74 (2d Cir. 2001). The FAC alleges that when Navios issued the challenged disclosures, the Board knew the costs associated with maintaining the ADSs' NYSE listing, having considered and approved those costs for years. FAC ¶¶ 102-07. It further alleges that the Merger, the Delisting, and the subsequent tender offer were preplanned components of a scheme to depress the ADSs' value and induce holders to relinquish their priority rights at reduced prices. Id. ¶¶ 78-83, 96-99. By completing Ms. Frangou's acquisition of Navios' outstanding common stock, plaintiffs allege that the Merger eliminated the only constituency, apart from the Preferred Stock itself, with any interest in continued NYSE listing. Id. ¶¶ 23, 42, 79-81.

Taken together, these allegations support a strong inference that Navios knew, at the time it represented that the Preferred Stock and ADSs would be "unaffected," that the Delisting was already contemplated or, at minimum, was reckless in representing that the ADSs would be unaffected without disclosing that possibility. This inference is reinforced by the temporal proximity between the challenged statements and the Delisting

approximately five weeks after the Merger closed, allegedly on the basis of costs already known to Navios.

**c. Loss Causation**

Plaintiffs have adequately pleaded loss causation. The FAC alleges that the market price of the ADSs declined sharply upon Navios' announcement of the Delisting in January 2024, id. ¶¶ 59-63, and that plaintiffs would have sold their ADSs had Navios disclosed its intention to delist before the Merger closed, id. ¶ 52. While the FAC acknowledges earlier disclosure also would have caused the ADSs' price to decline sharply, id. ¶ 148, the market plausibly could have reacted differently to a conditional disclosure made while the Merger remained pending than to Navios' post-closing announcement of a definitive Delisting.

The Court further observes that such a difference would be consistent with the change in the Preferred Stock's investment profile discussed above. A hypothetical disclosure made while the Merger remained pending would have concerned ADSs that remained listed on the NYSE and a company whose common stock continued to be publicly held. The actual announcement, made after the Merger closed, concerned ADSs in a wholly-owned company that Navios definitively decided to remove from the NYSE and relegate to OTC trading. It is plausible that the market reacted more severely to

news bearing on the latter, less attractive investment than it would have reacted to the same news delivered against the backdrop of the former.

At the pleading stage, these allegations sufficiently plead a causal connection between the challenged statements and plaintiffs' losses.

**d. Holder Claim**

Defendants argue that because plaintiffs held their ADSs, rather than sell them, in reliance on the challenged statements, plaintiffs' fraud claim constitutes an impermissible "holder" claim under California or New York law. Mot. at 21-22. The Court disagrees. California recognizes holder claims where a plaintiff pleads the number of shares that would have been sold and when the sale would have occurred. Small v. Fritz Cos., 30 Cal. 4th 167, 184 (2003). New York law is less settled. While Starr Foundation v. American International Group, Inc., 76 A.D.3d 25, 27-28 (1st Dep't 2010) rejected a holder claim seeking to recover a hypothetical lost bargain as inconsistent with New York's out-of-pocket rule governing fraud damages, Matana v. Merkin, 957 F. Supp. 2d 473, 490-92 (S.D.N.Y. 2013) construed Starr as not necessarily foreclosing a holder claim seeking the ascertainable loss resulting from fraudulently induced retention. See also

Continental Ins. Co. v. Mercadante, 222 A.D. 181, 183 (1st Dep't 1927).

The Court need not determine whether the two states' approaches conflict because the FAC states a claim under either. Under California law, plaintiffs identify the precise number of ADSs each held, allege that each would have sold all of their ADSs, and state that they would have done so upon disclosure during the period preceding the Merger's closing. FAC ¶¶ 6-7, 147-50. Plaintiffs' claim also survives under a narrower reading of New York law. Unlike the plaintiff in Starr, plaintiffs do not seek only the lost profits they might have earned from a fortunately timed hypothetical sale. Rather, plaintiffs allege that the fraud induced them to retain securities whose presently ascertainable market value is substantially below their acquisition cost and their value before the alleged fraud was revealed. Id. ¶¶ 59-64, 72-76. Those allegations identify an actual diminution in the value of property plaintiffs continue to own and not merely an unrealized profit on a transaction that never occurred. Whether that diminution constitutes recoverable losses is appropriately addressed on a more developed record. Accordingly, the Court declines to dismiss the fraud claim against Navios as an impermissible holder claim.

**e. Attribution to Messrs. Sasada and Stratakis**

Plaintiffs' fraud claim against Messrs. Sasada and Stratakis fails for a separate reason. Rule 9(b) requires a plaintiff to plead with particularity the specific statement the defendant made or that the defendant was otherwise responsible for the challenged statement. In re Crude Oil Commodity Litig., 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) ("In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant[.]"). Here, the only individualized allegations concerning Messrs. Sasada and Stratakis identify their positions as Navios directors and, as to Mr. Sasada, his role as president of Navios Corporation, a wholly owned Navios subsidiary, and Navios Maritime Partners, L.P. FAC ¶¶ 12-13, 20(j). Neither is alleged to have signed, drafted, edited, or been individually consulted regarding the disclosures.

Instead, the FAC alleges collectively that the Director Defendants "knew the substance and content" of the disclosures and "authorized them to be filed with the SEC." Id. ¶¶ 46, 138. Neither Mr. Sasada nor Mr. Stratakis was a member of the Special Committee that negotiated the Merger. Id. ¶¶ 10-11. Nor does the FAC allege that Mr. Sasada's role at Navios Corporation or Navios

Maritime Partners, L.P. gave him any particular involvement in Navios' disclosures regarding the Preferred Stock. Accordingly, the FAC does not identify any personal role that either director played in creating, disseminating, or formulating the challenged statements.

Group pleading of the kind permitted by Loreley Financing No. 3 (Jersey) Ltd. v. Wells Fargo Securities, LLC, 797 F.3d 160, 173 (2d Cir. 2015), is appropriate where the complaint supplies grounds for attributing the challenged statements to the defendants as a group. It does not substitute for individualized allegations against directors with no alleged operational role in the specific conduct at issue. Because the FAC alleges nothing in particular as to either Mr. Sasada or Mr. Stratakis beyond their status as directors, the fraud claim against them is dismissed.[6]

---

[6] The FAC also fails to plead scienter as to either director individually. Though it alleges that the Board knew of the plan to delist the ADSs, it identifies no meeting, communication, document, or other information from which either Mr. Sasada or Mr. Stratakis allegedly learned of the plan before the challenged disclosures. Nor does it allege that either director received any concrete personal benefit from the alleged fraud. As alleged, any such financial benefit flowed to Ms. Frangou. FAC ¶¶ 82-83, 125, 133-34 (describing "Frangou's disloyal scheme" from which "she would solely benefit"). The Court further observes that, although the FAC asserts a fraud claim against Ms. Frangou and all Director Defendants, only Messrs. Sasada and Stratakis have been served and appeared in this action. This distinction is particularly significant with respect to Ms. Frangou, whom the FAC identifies as the principal architect and beneficiary of the alleged conduct, and whose knowledge is pleaded differently from that attributed to Messrs. Sasada and Stratakis. Further, the FAC separately alleges that Messrs. Magoulas and Malanga served on Navios' Special Committee, which was formed to evaluate the Merger. Id. ¶¶ 10-11, 20(g), 43, 96-97. The Court accordingly addresses the sufficiency of the

**III. Fiduciary Duty Claims**

Plaintiffs allege that the Director Defendants breached fiduciary duties owned to plaintiffs as holders of Preferred Stock and advance two theories of liability: (i) breach of the duty of loyalty, arising from the Board's decision to approve the Delisting; and (ii) a breach of the duty of candor, arising from same disclosures at issue in the fraud claim.[7] FAC ¶¶ 111, 114. Because Navios is organized under the laws of the Republic of the Marshall Islands, the fiduciary duties owed by its directors are governed by Marshall Islands law, which incorporates the non-statutory law of Delaware on matters of corporate governance. FAC ¶ 108; 52 Marsh. Is. Rev. Code Part I, § 13. A claim for breach of fiduciary duty requires that a duty existed and that the defendant breached it. Beard Rsch., Inc. v. Kates, 8 A.3d 573, 601 (Del. Ch. 2010). Defendants argue that the challenged conduct did not implicate any fiduciary duty owed to plaintiffs as preferred stockholders. Mot. at 22-26. The Court agrees.

---

fraud claim only as to Navios and Messrs. Sasada and Stratakis and expresses no view regarding the claims against the remaining Director Defendants or Ms. Frangou.

[7] The FAC asserts breach of fiduciary duty claims against Ms. Frangou and all Director Defendants. FAC ¶¶ 117-35. Because only Messrs. Sasada and Stratakis have been served and appeared, the Court addresses the sufficiency of the fiduciary duty claims only as to them and expresses no view regarding the claims against the remaining defendants.

**a. Duty of Loyalty**

Under Delaware law, because the "rights and preferences of preferred stock are contractual in nature," directors do not owe fiduciary duties to preferred stockholders when taking corporate action that triggers or circumvents the preferred stockholders' contractual rights. Frederick Hsu Living Tr. v. ODN Holding Corp., 2017 WL 1437308, at *21-22 (Del. Ch. Apr. 14, 2017); McRitchie v. Zuckerberg, 315 A.3d 518, 550 (Del. Ch. 2024). Preferred stockholders may invoke fiduciary protections where they rely not on those special contractual rights but rather on a right shared equally with the common stockholders. In re Trados Inc. S'holder Litig., 73 A.3d 17, 39-40 (Del. Ch. 2013).

Here, the FAC characterizes the Delisting as a mechanism directed at the Preferred Stock, rather than a decision affecting preferred and common stockholders alike. Specifically, the FAC alleges that the Merger, Delisting, and tender offer were "preplanned parts" of a scheme to coerce preferred stockholders into "releas[ing] their priority rights" without Navios "having to pay them the fair value for surrendering those lucrative rights." FAC ¶¶ 82-83. These allegations implicate the Preferred Stock's contractual entitlements: common stockholders had no comparable priority rights to accrued dividends, liquidation preferences, or

Navios' assets. Indeed, plaintiffs' theory is that the Delisting diminished the value of the special rights by enabling Navios to acquire the Preferred Stock without paying consideration reflecting those priority rights. Accordingly, plaintiffs fail to state a claim against Messrs. Sasada and Stratakis.

**b. Duty of Candor**

Directors owe stockholders a specific duty of disclosure when soliciting stockholder action. Dohmen v. Goodman, 234 A.3d 1161, 1168-69 (Del. 2020). When no stockholder action is requested, the specific duty of disclosure does not apply. Id. at 1169. Directors nevertheless remain subject to their general fiduciary duties when communicating with stockholders and may be held accountable if they "knowingly disseminate false information that results in corporate injury or damage to an individual stockholder[.]" Malone v. Brincat, 722 A.2d 5, 9 (Del. 1998). Here, the challenged disclosures were issued in connection with the Merger, but preferred stockholders were not asked to vote or take action with respect to that transaction. Accordingly, no specific duty of disclosure arose as to plaintiffs. Dohmen, 234 A.3d at 1168-19. Plaintiffs may therefore only proceed under Malone's rule prohibiting directors from knowingly communicating false information.

The FAC alleges that the Board collectively knew of the costs of continued NYSE listing while the challenged disclosures were being made. FAC ¶¶ 102-07. The Court has found those allegations sufficient to support the fraud claim against Navios. However, as discussed above, the FAC alleges no facts specific to Messrs. Sasada or Stratakis individually, as distinct from the Board or Navios, showing that either knew the disclosures were false or misleading. Because the FAC does not plausibly allege that either Mr. Sasada or Mr. Stratakis knowingly disseminated false or misleading information, plaintiffs fail to state a claim against them under Malone. This conclusion rests on the absence of individualized allegations as to Messrs. Sasada and Stratakis and does not address whether the FAC's allegations would satisfy the same standard as to the remaining Director Defendants or Ms. Frangou.

**IV. Books-and-Records Claim**

Plaintiff Dintzer seeks to enforce a demand to inspect Navios' books and records under the Business Corporations Act of the Republic of the Marshall Islands ("BCA"). FAC ¶¶ 155-61. Defendants move to dismiss the claim on the grounds that this Court is not the proper forum and that, in any event, Mr. Dintzer's demand did not comply with the BCA's requirements. Mot. at 26-

28. Because the FAC does not allege refusal of a formal, lawful demand, Mr. Dintzer's books-and-records claim is dismissed without prejudice.

Under the BCA, a shareholder of a Marshall Islands corporation may "inspect, for a purpose reasonably related to his interests as a shareholder . . . [the corporation's] share register, books of account, and minutes of all proceedings." 52 Marsh. Is. Rev. Code § 81(1). A corporation may deny inspection to a shareholder who "refuses to furnish an affidavit attesting to [the] right to inspect[.]" Id. § 81(2). The BCA further provides that upon refusal of a "lawful demand for inspection," the applicant "may apply to the High Court [of the Marshall Islands] . . . for an order directing the corporation to show cause why an order should not be granted permitting such inspection[.]" Id. § 84. Plaintiffs argue that the BCA's use of the word "may," rather than "shall," does not vest exclusive jurisdiction over inspection disputes in the Marshall Islands High Court. Opp. at 31-32. The Court need not resolve that question, however, because Mr. Dinzter has not alleged the refusal of a "lawful demand" necessary to invoke Section 84's enforcement remedy.

Mr. Dintzer's April 2024 letter stated that it did not constitute "formal service of an inspection demand." ECF No. 43-

4 at 2. Thus, the letter itself cannot constitute the formal demand Mr. Dintzer asks the Court to remedy. Further, Mr. Dintzer's letter was not accompanied by an affidavit attesting to his inspection rights and requested materials exceeding the scope of those enumerated in BCA § 81(1). ECF No. 43-4 at 2. In response, plaintiffs represent that they "will issue a renewed demand on behalf of both Plaintiffs, so that any disputes may be ripe for the Court's resolution," Opp. at 32, confirming that the present claim is premature. Accordingly, the books-and-records claim is dismissed without prejudice to plaintiffs' service of a compliant formal demand and, if demand is refused, pursuit of remedies in the appropriate forum.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted in part and denied in part. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 40.

Dated: August 4, 2026
New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE